IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:19-cv-00878-RM-KMT

JEFFERY WAYNE METZLER,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, a municipality,
ELIZABETH REID, in her individual capacity,
JOHN CHADBOURNE, in his individual capacity,
CRAIG SIMPSON, in his individual capacity, and
KEVIN CLARK, in his individual capacity,

    Defendants.

---

## ORDER
---

This matter is before the Court on Defendants' motion to dismiss based on qualified immunity and failure to state a claim (ECF No. 28) and Plaintiff's motion to strike two exhibits attached to Defendants' reply brief (ECF No. 38). For the reasons below, the Court grants Defendants' motion and denies Plaintiff's motion as moot.

**I.    LEGAL STANDARDS**

Qualified immunity shields individual defendants named in actions brought under 42 U.S.C. § 1983 unless their conduct was unreasonable in light of clearly established law. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly

established at the time of the defendant's unlawful conduct." *Id.* (quotation omitted). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted). To determine whether a claim is plausible, a court considers "the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quotation omitted). However, if the allegations "are so general that they encompass a wide swath of conduct, much of it innocent," the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quotation omitted).

## II.  BACKGROUND

In August 2017, the Colorado Springs Police Department ("CSPD") conducted a sting operation targeting people seeking to purchase sex with minors.  After placing an internet advertisement, Defendant Reid, a CSPD detective, received a call from "Rick" and proceeded to make arrangements for him to have sex with "her little sister," who she said was sixteen.  A few hours later, Defendant Reid met Rick at a hotel complex, asked him to show her the money, and gave him a room key and a condom.  Had Rick gone to the room, he would have been arrested by CSPD officers.  However, after speaking with Defendant Reid, Rick disappeared from the vicinity.  Although CSPD officers had watched Rick arrive and had taken a video of his interaction with Defendant Reid, they did not obtain the license plate number of his vehicle or any still photos of him.

Further investigation by CSPD revealed that the phone number Rick had used was listed to Plaintiff in a law enforcement database.  In fact, the number was associated with a cell phone that belonged to Plaintiff's former employer, and although Plaintiff used the number in 2011 and 2012, he had not used it since.  Defendant Reid viewed Plaintiff's driver's license photo and some Facebook photos and erroneously identified him as Rick.  In an affidavit supporting an application for an arrest warrant, she described the sting operation and her subsequent efforts to identify Rick.

After the warrant issued, CSPD officers went to Plaintiff's house.  Plaintiff was not home, but a neighbor provided Plaintiff's current phone number.  CSPD then called Plaintiff and informed him there was a warrant for his arrest for soliciting a prostitute.  Days later, Plaintiff

turned himself in. He spent two days in jail before bonding out. He was later charged with two counts of soliciting for child prostitution and a third count of pandering to a child.

In the months that followed, CSPD investigated further. CSPD officers spoke with Plaintiff's coworkers at the company where he worked in August 2017, several of whom were shown images of Rick gleaned from the video taken by CSPD. The coworkers, one of whom was Plaintiff's stepsister, stated that the person in images was not Plaintiff. In addition, the employer's vice president provided CSPD with GPS data from Plaintiff's company vehicle, showing that it was many miles away from where the calls from Rick to Defendant Reid were made. Plaintiff contends that Defendants should have used current pictures of him (as opposed to years-old photos from his driver's license and Facebook) to compare with the images they had of Rick, and that had they done so they would have realized that "beyond being a middle-aged white male, [Plaintiff] scarcely resembles Rick at all." (ECF No. 17 at ¶ 93.) They would have noticed, for example, that Plaintiff "is obviously thinner and of fairer complexion," that [h]is hairline is not receding," that [h]is earlobes are not attached," that he "has two spots on the right of his face that look like moles," and that he "has a long, oval face," all characteristics that distinguish his appearance from Rick's. (ECF No. 17 at ¶ 93.)

In February 2018, the district attorney filed a motion to dismiss *nolle prosequi*, requesting that all the counts against Plaintiff be dismissed without prejudice. The motion states that "[t]he People are unable to prove this case beyond a reasonable doubt at this time." (ECF No. 28-3 at 1.) The district court granted the motion.

Plaintiff then brought this lawsuit asserting two Fourth Amendment claims under § 1983—unlawful seizure and malicious prosecution—on the grounds that Defendants lacked

4

probable cause to arrest and prosecute him. He contends Defendants misidentified him due to "a combination of failures," including by relying on an old phone number that he no longer used and old driver's license and Facebook photos that did not portray his appearance at the time of the sting operation and by allowing Rick to evade arrest. (ECF No. 17 at ¶ 3.) He further contends that "minimal further investigation would have exonerated" him sooner, and that he suffered mental and emotional anguish and professional, reputational, and economic damages stemming from his arrest and prosecution. (*Id.* at ¶ 54.)

## III. ANALYSIS

### A. Motion to Dismiss

#### 1. <u>Qualified Immunity</u>

Defendants argue that the individual Defendants[1] are entitled to qualified immunity because the allegations do not show that they violated Plaintiff's clearly established rights. The Court agrees.

##### a. *Unlawful Arrest*

Although Plaintiff was arrested pursuant to a warrant issued by a magistrate judge, the warrant offers no protection for the individual Defendants "[i]f it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014) (quotation omitted). A warrant does not protect an officer who misrepresents or omits material facts when applying it. *Id.* To state a claim for unlawful arrest under such circumstances, the burden is on the plaintiff to "make a substantial showing of deliberate falsehood or reckless disregard for truth by the officer seeking the warrant." *Id.*

---

[1] In his response to the motion to dismiss, Plaintiff agreed to voluntarily dismiss the claims against Defendant Simpson. (ECF No. 35 at 12 n.2.)

(quotation omitted). And "[t]o establish reckless disregard in the presentation of information to a magistrate judge, there must exist evidence that the officer in fact entertained serious doubts as to the truth of [the] allegations." *Id.* (quotation omitted). When assessing a qualified immunity defense on an unlawful arrest claim, the Court must determine "whether there was arguable probable cause for the challenged conduct." *Id.* at 1141 (quotation omitted). Arguable probable cause exists if "the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id.*

Plaintiff contends Defendant Reid knowingly or recklessly misrepresented or omitted material facts in her application for an arrest warrant by stating that the suspect's phone number was "listed to" Plaintiff and that Plaintiff's driver's license photo "matched" the appearance of the person she interacted with during the sting operation. (ECF No. 28-2 at 6.) Plaintiff contends Defendant Reid failed to disclose that she "doubted she had correctly identified Plaintiff as Rick" and that she "did *not* actually make a positive identification." (ECF No. 35 at 6.) In support of this theory, Plaintiff further alleges that after he turned himself in, Defendant Reid "came to the jail to show an officer there the video of her encounter with Rick, along with still-shots ripped from the video" because she needed "to confirm" that Plaintiff was the suspect. (*Id.*)

The Court finds these allegations are insufficient to show that Defendant Reid knowingly or recklessly misrepresented or omitted material facts. Setting speculation aside, there is no basis for finding that Defendant Reid knew that the phone number used by Rick was no longer Plaintiff's at the time she submitted her affidavit. Plaintiff's assertion in his response brief that his private investigator was able to find evidence that Plaintiff had not used the phone number in

6

years is insufficient to show that Defendant Reid had the same information. (*See* ECF No. 35 at 11-12.)

Nor is there a basis for finding that Defendant Reid acted unreasonably in following up on this lead by looking at available photos of Plaintiff to attempt to determine whether he was the suspect. This is not a case where Plaintiff and the suspect, both middle-aged white males, bear no resemblance to one another. Indeed, by arguing that his photos from a few years before should not have been used (primarily because Plaintiff had subsequently lost some weight), Plaintiff implicitly concedes that his appearance then bears at least some resemblance to the suspect's. Defendant Reid, who interacted directly with Rick during the sting operation but had not seen Plaintiff in person, stated in her affidavit that she believed Plaintiff was a "match" based on the photos she saw. Plaintiff's allegations do not support a reasonable inference that she did not believe her identification was correct or that she seriously doubted it. Finally, although Plaintiff contends that Defendant Reid should have placed Plaintiff's photos in a lineup or taken other measures to reduce confirmation bias when witnesses identify suspects, he cites no authority for the proposition that such procedures are required, much less that he had a clearly established right to such procedures. *See Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) ("A right is clearly established if, at the time of the conduct, existing precedent has placed the statutory or constitutional question beyond debate." (quotation omitted)).

Plaintiff also contends that other CSPD officers' conduct "sufficiently contributed to the misrepresentations or omissions in the warrant application so as to establish their liability." (ECF No. 35 at 5.) The basis for this argument is that Defendant Chadbourne's identification of Plaintiff as the suspect was unreliable because he was told that Plaintiff's phone number matched

7

the number Rick had used, he had observed the suspect only from a distance during the sting operation, and he relied on "outdated Facebook photos." (ECF No. 35 at 11.) But the arrest application relies solely on Defendant Reid's affidavit, which describes her own observations and investigation only. Thus, there is no basis for finding these officers' conduct caused Plaintiff's arrest or subsequent prosecution. Moreover, even if the officers' conduct had contributed to Plaintiff's arrest, Plaintiff has not shown that these officers' conduct violated Plaintiff's clearly established rights for the reasons discussed above with respect to Defendant Reid's identification process.

Plaintiff's contention that "CSPD officers failed to conduct minimal further investigation that would have exonerated Plaintiff" before applying for the arrest warrant is also unavailing. (ECF No. 35 at 5.) Plaintiff contends, for example, that CSPD should have obtained and followed up on the license plate number of the vehicle Rick drove to the sting operation, that Defendant Reid could have worn a body camera, and that the officers could have interviewed Plaintiff's coworkers sooner. However, "the failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. To the contrary, it is generally considered to betoken negligence at most." *Stonecipher*, 759 F.3d at 1142 (quotation omitted). The Court finds that the allegations to do not provide a basis for concluding that the individual Defendants' conduct was not objectively reasonable or that applying for an arrest warrant before taking additional steps violated Plaintiff's clearly established rights.

### b. *Malicious Prosecution*

To state a claim for malicious prosecution, a plaintiff must allege (1) the defendant caused the plaintiff's confinement or prosecution; (2) the original action terminated in the plaintiff's favor; (3) there was no probable cause to arrest or prosecute the plaintiff; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). Defendants contend Plaintiff has not established the second, third, and fourth elements. The Court agrees that the third and fourth elements are not satisfied and therefore does not reach the issue of whether the dismissal of the charges against Plaintiff and the circumstances surrounding that dismissal constitute a termination in his favor.

With respect to the third element, the Court has already concluded that there was probable cause to arrest Plaintiff. "[N]ot every arrest, prosecution, confinement, or conviction that turns out to have involved an innocent person should be actionable." *Pierce v. Gilchrist*, 359 F.3d 1279, 1294 (10th Cir. 2004). The fact that further investigation led to the charges against him being dropped does not negate the probable cause that existed at the time Plaintiff was arrested and charged. Nor has Plaintiff alleged that Defendants unduly delayed having the charges dismissed once that probable cause evaporated.

Regarding the fourth element, Plaintiff has not alleged that any individual Defendant acted intentionally or with malice. Plaintiff alleges, at most, that they had a reckless disregard for the truth as to the information that supported his arrest and prosecution. However, once the prosecution determined that it was unable to prove the case beyond a reasonable doubt—about five months after Plaintiff was charged—it moved to dismiss the charges. Under these

circumstances, Plaintiff has not adequately alleged malice to sustain a malicious prosecution claim.

    2.    <u>Municipal Liability</u>

To state a § 1983 claim against Defendant City of Colorado Springs, Plaintiff must show the existence of a municipal policy or custom and a causal link between the policy or custom and the injury alleged. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015). He must also "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

Plaintiff alleges generally that Defendant City of Colorado Springs has a widespread practice of violating the Fourth Amendment rights of persons in Colorado Springs. (ECF No. 17 at ¶ 135.) To support his assertion that "CSPD has a history of making arrests without probable cause," Plaintiff lists several instances going back to 2009 in which CSPD officers have been accused of making arrests without probable cause. The Court declines to accept these entirely conclusory allegations as true for present purposes. Further, with a few exceptions, these instances have little in common with the circumstances of Plaintiff's arrest and are not relevant here. For example, three cases deal with arrests of people who were filming or protesting CSPD activities, one deals with a misidentification of a suspect by a witness, and one deals with an arrest based on a repealed law. To the extent any of the other instances of allege misconduct are relevant to Plaintiff's case, the Court finds they are insufficient to show a policy or custom by Defendant City of Colorado Springs of depriving people of their Fourth Amendment rights.

Plaintiff's conclusory allegation that Defendant City of Colorado Springs "failed to properly train and supervise its employees with regard to the probable cause requirement for lawful arrests" (ECF No. 17 at ¶ 136) is also insufficient to state a claim for municipal liability. The Court finds that the instances alleged above could not have provided Defendant City of Colorado Springs with actual or constructive notice that its failure to provide additional training was substantially certain to result in a constitutional violation. *See Bryson v. City of Okla. City*, 627 F.3d 784, 789 (10th Cir. 2010). Plaintiff has neither alleged sufficient facts to show that a violation occurred in this case nor identified any specific training that he contends should be required. Accordingly, Plaintiff has failed to state a claim for failure to train.

**B.    Motion to Strike**

Plaintiff has moved to strike two exhibits attached to Defendants' reply in support of their motion to dismiss. The exhibits played no role in the Court's consideration of Defendants' motion. Accordingly, the motion is denied as moot.

**IV.    CONCLUSION**

Therefore, the Court GRANTS Defendants' motion to dismiss (ECF No. 28) and DENIES AS MOOT Plaintiff's motion to strike (ECF No. 38). The Clerk is directed to CLOSE the case.

DATED this 3rd day of February, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge